IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

ELFIGO GRAHAM and LISA GRAHAM,
individually and as parents and personal
representatives of Elfigo Graham, Jr., a minor,

        Plaintiffs,

v.                                         No. CIV 07-1057 BB/WPL

ANIMAS SCHOOL DISTRICT and RUBEN
AGUALLO, individually and in his official
capacity,

        Defendants.

MEMORANDUM OPINION
AND
ORDER GRANTING MOTION TO DISMISS

THIS MATTER is before the Court on Defendants' *Motion to Dismiss* [doc. 6] based on its arguments: (1) in-school suspension does not implicate due process; (2) qualified immunity for Ruben Aguallo; and (3) no *Monell*[1] claim exists against the school. Defendants' motion will be Granted.

### *Discussion*

This Court's function in considering a motion to dismiss is not to weigh the potential evidence, but to assess whether Plaintiffs' complaint is legally sufficient to state a claim for relief. *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must consider "the plausibility of the complaint." *Alvarado*

---

[1]     *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 689 (1978).

*v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).  Under this standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007); *Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007).  All well pleaded facts, as distinguished from conclusory allegations, are to be accepted as true and viewed in the light most favorable to the nonmoving party.  *Teigen v. Renfrow*, ___ F.3d ___, 2007 WL 4553751 (10th Cir. 2007).

In their complaint, Plaintiffs allege that based on two reports of sexual harassment from female students, Plaintiff Elfigo Graham, Jr. ("Jr."), was interrogated by Defendant Reuben Aguallo, the principal of the Animas High School.  Jr. informed Aguallo that he was represented by counsel who had taped a recantation from one of the females and had other exculpatory evidence.  Aguallo declined to allow Jr.'s attorney to attend a disciplinary conference or review subsequent text messages from the female complainants. Rather, Aguallo indicated he was prepared to act on the evidence he had compiled and imposed the following sanctions:

1.      Five days of in-school suspension.

2.      Counseling to address behavior at the expense of the parents. Conditions as follows:

    A.      Proof of counseling or counseling appointments within two weeks.

    B.      Failure to provide proof of counseling within two weeks will result in all extra-curricular privileges being revoked until such proof is provided.

3.      Refrain from hugging, poking, and/or touching females.

      **4.**     **Retaliation of any form to any student or witness will result in further disciplinary action including, but not limited to, suspension or expulsion.**

**Pls.' Orig. Compl. ¶ 11 at 5.**

      **Plaintiffs here allege that:**

      **As a direct and proximate result of the wrongful conduct of the Defendants in this case, as set out above, Plaintiff Elfigo Graham, Jr., has suffered damages in the loss of his property interest in educational benefits; damage to his standing with fellow students and teachers; interference with later opportunities for higher education and employment; and Plaintiffs Elfigo Graham, Sr. and Lisa Graham have suffered expenses associated with retaining counseling services as set out in the disciplinary report.**

**Pls.' Orig. Compl. ¶ 14.**

      <u>*Due Process*</u>

      **Students have a property interest in their public education.  *Goss v. Lopez*, 419 U.S. 565 (1975).  This property interest is not so insubstantial that suspensions or certain other penalties may be constitutionally imposed by any random procedure a school may choose, no matter how arbitrary.  *Goss*, 419 U.S. at 576.  However *de minimis* or trivial deprivations of liberty for proper disciplinary purposes do not implicate due process requirements.  *Zamora v. Pomeroy*, 639 F.2d 662, 669-70 (10th Cir. 1981); *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1080-81 (5th Cir. 1995); *Piwonka v. Tidehaven Indep. Sch. Dist.*, 961 F. Supp. 169 (S.D. Tex. 1997).**

      **What process is due, of course, depends on the nature of the sanction or suspension. A long-term suspension or expulsion requires additional process beyond that required for a short term suspension.  *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001). The sanction here, five days in-school suspension, is *de minimis* and the vast majority of legal**

authorities have found no due process rights for such short term in-school suspension.[2]  Nor would the fact Principal Aguallo conditioned future extracurricular activities on mandatory counseling cause due process concerns.[3]

Moreover, even if Jr. were entitled to due process, he received sufficient procedural due process under the circumstances.  Public policy commits the education of students to the public school system and "[j]udicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint."  *West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1363 (10th Cir. 2000) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). Even if due process required judicial intervention, it requires no more than the student be given notice of the charges and chance to provide his verison of events.  *Id.*, 206 F.3d at 1364; *see also Watson ex rel. Watson*, 242 F.3d at 1340.  It does not require, as Plaintiffs imply, a formal notice, hearing with counsel present or a full consideration of all the evidence presented by all parties.  *Id.*  "There is no requirement that the student be given an opportunity to retain counsel, to confront or cross-examine witnesses, or to call his own witnesses." *DNK*, at 7 (citing

---

[2]     *Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 562 n. 3 (8th Cir. 1988) (no property or liberty interest implicated by in-school suspension); *Esparza v. Board of Trustees*, 182 F.3d 915 (5th Cir. 1999) (unpublished); *Piwonka*, 961 F. Supp. at 169 (no student liberty involved in placement of student in school detention for five days); *Rice v. Lautzenhizer*, 1996 WL 671618 (N.D. Miss.); *Hayes Through Hayes v. Unified Sch. Dist. No. 377*, 669 F. Supp. 1519 (D. Kan. 1987), *rev'd on other grounds*, 877 F.2d 809 (10th Cir. 1989) (in-school suspension of child for up to five days did not infringe on constitutionally protected property or liberty interests in education); *Dickens by Dickens v. Johnson County Bd. of Educ.*, 661 F. Supp. 155 (E.D. Tenn. 1987) (disciplinary isolation of student in "time-out" box in classroom did not involve student's property or liberty interest); *Fenton v. Stear*, 423 F. Supp. 767 (W.D. Pa. 1976) (three-day in-school suspension of student did not constitute a deprivation of student's liberty or property interest).

[3]     There is no property right to extracurricular activities that is protected by due process.  *Seamons v. Snow*, 84 F.3d 1226, 1234-35 (10th Cir. 1996); *Angstadt v. Mid-West Sch. Dist.*, 377 F.3d 338, 344 (3d Cir. 2004). Since Principal Aguallo could have totally deprived Jr. of such extracurricular activities, it follows he could condition participation in extracurricular activities on proof of counseling.  As this is the only claim affecting Plaintiffs Elfigo Sr. and Lisa Graham, they have no damages.  *See Brian A. v. Stroudsburg Area Sch. Dist.*, 141 F. Supp. 2d 502, 504 (M.D. Pa. 2001) (right to public education and due process protection belongs to student, not parents).

*Goss*, 419 U.S. at 583).  The "hearing" can be informal and immediately follow the student being advised of the charges.  *Id.; Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 706 (7th Cir. 2002); *DNK ex rel. Kassel v. Douglas County Sch. Dist.*, 2006 WL 2331086, slip op. 7 (D. Colo.); *cf West*, 206 F.3d at 1364 ("[P]ublic school districts are not courts of law and their disciplinary policies and procedures do not equate with penal codes.").

According to the complaint, both Jr. and his parents allege they were notified of charges on which the suspension was based.  They retained an attorney, conducted an investigation which was proffered to Principal Aguallo by Plaintiff Lisa Graham.  Principal Aguallo told Lisa Graham that he had already considered the evidence in the case and was prepared to act on the information he already had without considering any further evidence. (Compl. ¶ 8).  Plaintiffs' attorney then called Aguallo and also "advised him of the existence of the tape-recorded statements by the two female students recanting their accusations and of the telephonically recorded 'text messages' by the same two female students wherein they admitted lying about their accusations."  (Compl. ¶ 9).  Under the most favorable interpretation of the facts, the minor Plaintiff, Jr., was immediately apprised of all of the allegations against him on August 20, 2007, and at that time he was provided the opportunity to present his side of events, which consisted of his denial of the alleged behavior.  (Amend. Compl. ¶ 5).  Due process certainly requires no more for a five-day in-school suspension.

### *Qualified Immunity*

Where qualified immunity is raised as a defense to a claim under Section 1983, it is plaintiff's burden to point to particular facts that overcome the defense.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  In order to satisfy this burden, plaintiff must demonstrate

5

that defendant's actions violated a constitutional right and that such legal right was recognized by either the Supreme Court or Tenth Circuit or is clearly accepted by the majority of other courts. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007). The Court is not aware of, and Plaintiffs did not provide, any Supreme Court or Tenth Circuit precedent indicating a five-day suspension, or any of the other "penalties" imposed, implicate Jr.'s constitutional rights. Indeed, as indicated in the earlier discussion, the strong consensus of the courts to the contrary and therefore qualified immunity has regularly been sustained in this context. *DNK, supra*; *Doe v. Aguilar*, 400 F. Supp. 2d 922 (W.D. Tex. 2005); *Jackson ex rel. Hadley v. Alamo Heights Indep. Sch. Dist.*, 2003 WL 22999827 (W.D. Tex.) (equal protection claim).

### School District

There is no *respondent superior* liability under Section 1983. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). An entity cannot thus be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor. *Monell*, 436 U.S. at 689. Moreover, supervisors are not liable under Section 1983 "unless there is an affirmative link between the constitutional deprivation and the supervisor's exercise of control or direction, his personal participation, or his failure to supervise." *Kiesling v. Troughton*, 107 F.3d 880 (10th Cir. 1997) (citing *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988), and dismissing County Commissioners where plaintiff alleged excessive force used in arrest). Plaintiffs, then, must show the Animas School District created an unconstitutional policy and that policy caused the constitutional violation. *McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997). Here, Plaintiffs only allege the School Board failed "to establish policies and

procedures according due process to students facing disciplinary action." (Pls.' Resp. p. 3). This is insufficient. *See Burreson v. Barneveld Sch. Dist.*, 434 F. Supp. 2d 588, 593 (W.D. Wisc. 2006).

**O R D E R**

For the above stated reasons, Defendants' *Motion to Dismiss* will be GRANTED, and Plaintiffs' *Complaint* is DISMISSED with prejudice for failure to state a cause of action cognizable at law.

SO ORDERED this 30th day of January, 2008.

**BRUCE D. BLACK**
**United States District Judge**